DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**PAUL KUNZ,** as next friend of **W.K.**, a minor child,
Appellant,

v.

**SCHOOL BOARD OF PALM BEACH COUNTY,**
Appellee.

No. 4D17-648

[February 14, 2018]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Lisa S. Small, Judge; L.T. Case No. 2015CA010870XXXXMB.

Paul Kunz, Boca Raton, for appellant.

Sean Fahey and Shawntoyia N. Bernard, West Palm Beach, for appellee.

KUNTZ, J.

Paul Kunz, as next friend of W.K.,[1] filed a complaint asserting the School Board of Palm Beach County ("School Board") falsified its class-size counts to conceal violating article IX, section 1 of the Florida Constitution. After the circuit court dismissed the complaint without prejudice, W.K. declined to amend the complaint and appealed the court's order.

On multiple occasions our supreme court has held the constitutional amendment at issue (otherwise known as the Class-Size Amendment) compelled an appropriation of funds by the legislature, not the utilization of any specific procedure by that branch. Because the amendment

---

[1] We question whether Kunz, as the alleged guardian of W.K., was required to proceed as "next friend." Fla. R. Civ. P. 1.210(b). However, regardless of the label, W.K. is the real party in interest whether the suit is brought on behalf of W.K. or as next friend of W.K. *Gilbertson v. Boggs*, 743 So. 2d 123, 128 (Fla. 4th DCA 1999), *receded from on other grounds in Beckford v. Drogan*, 216 So. 3d 1 (Fla. 4th DCA 2017); *see also Watson By & Through Watson v. State Farm Mut. Auto. Ins. Co.*, 639 So. 2d 687, 688 (Fla. 2d DCA 1994). Therefore, we proceed to the merits without altering the semantics of Kunz's action on behalf of his child.

compelled appropriation to achieve a goal, and not a method of enforcement, it does not provide a private right of action to enforce any specific procedure. Furthermore, such a challenge to the procedure implemented by the legislature, and enforced by the executive branch, is not appropriately addressed by the judiciary. Nor is the judiciary in a position to monitor the classroom count of each classroom in the nearly 4,200 public schools in this state. Instead, the issue presented is a political question best left to the legislative and executive branch of government. As such, we affirm the circuit court's dismissal.

## *Background*

W.K., a student in a Palm Beach County school, filed a complaint seeking declaratory relief based upon the assertion that, since 2010, the School Board had "falsified" its class-size counts to conceal violating article IX, section 1 of the Florida Constitution. In the complaint, W.K. sought: (1) a declaration that the School Board's student-teacher count was unconstitutional; (2) to enjoin the School Board from using a student-teacher count that did not comply with the Class-Size Amendment; (3) to require a re-count of all elementary schools in the county; and (4) to require the School Board to provide sufficient teachers to bring all elementary classes into compliance with the Class-Size Amendment.

The School Board moved to dismiss, arguing the Class-Size Amendment was not self-executing and did not confer a private cause of action. The court held a hearing on the motion to dismiss; however, a transcript of the hearing was not provided. After the hearing, the court issued a written order granting the motion to dismiss for three stated reasons. First, the court found W.K. did not have a legal right to pursue a private cause of action against the School Board because the plain language of the Class-Size Amendment did not provide for private causes of action. Second, the court found W.K. failed to sufficiently plead a claim challenging section 1002.13, Florida Statutes. Third, the court found W.K. did not have a legal right to pursue "district or county wide relief."

The court's order dismissed the complaint without prejudice and allowed W.K. twenty days to file an amended complaint. W.K. declined to amend and, instead, filed a notice of appeal. We subsequently relinquished jurisdiction and the court issued a final order dismissing the complaint with prejudice, noting that the record showed W.K. had failed to file an amended complaint.

## *Analysis*

Our constitution establishes that each of the state's 67 counties constitute a school district, and that each school district is to be governed by a school board.  Art. IX, § 4, Fla. Const.  Further, it is the function of the school board to "operate, control and supervise all free public schools within the school district."  *Id.*  In other words, the school board is vested with exclusive authority over the free public schools within its district, subject only to "such infringement . . . expressly contemplated . . . by the Florida Constitution."  *Sch. Bd. of Palm Beach Cty. v. Fla. Charter Educ. Found., Inc.*, 213 So. 3d 356, 360 (Fla. 4th DCA 2017).

In 2002, the Class-Size Amendment "add[ed] both a maximum class size requirement and an obligation on the legislature to fund the class size requirement to article IX, section 1, of the Florida Constitution."  *Fla. Educ. Ass'n v. Fla. Dept. of State*, 48 So. 3d 694 (Fla. 2010).  The language of the Class-Size Amendment provides:

> To assure that children attending public schools obtain a high quality education, the legislature shall make adequate provision to ensure that, by the beginning of the 2010 school year, there are a sufficient number of classrooms so that:
>
> (1) The maximum number of students who are assigned to each teacher who is teaching in public school classrooms for prekindergarten through grade 3 does not exceed 18 students;
>
> (2) The maximum number of students who are assigned to each teacher who is teaching in public school classrooms for grades 4 through 8 does not exceed 22 students; and
>
> (3) The maximum number of students who are assigned to each teacher who is teaching in public school classrooms for grades 9 through 12 does not exceed 25 students.

Art. IX, § 1(a), Fla. Const.

The Class-Size Amendment specifically provides that "the legislature shall make adequate provision to ensure that" the amendment is carried out.  And, consistent with that obligation, "in the last two decades, K–12 education has been the single largest component of the state general revenue budget."  *Citizens for Strong Sch., Inc. v. Fla. State Bd. of Educ.*, 42 Fla. L. Weekly D2640, D2642 (Fla. 1st DCA Dec. 13, 2017) (internal quotation omitted).  In an effort to ensure the legislative appropriations are

used to reduce classroom size, the legislature enacted section 1003.03, Florida Statutes, which instructs school boards to meet the various class-size requirements at each school "on or before the October student membership survey" of each respective school year.

Here, W.K. purports to avoid attacking the legislative funding or the reporting requirements. Instead, W.K. states that the challenge is limited to the validity of the report submitted by one particular school. W.K. argues the School Board "adopted a practice of intentionally miscounting and thereby falsely certifying class-size compliance." Specifically, W.K. alleged that "[t]he District took the position that it could average class size across grades kindergarten through 3rd because the District arbitrarily designated [the school] a choice school." W.K. also challenged other aspects of the classroom count calculation, and argued that "the District utilized as 'classes' small group pull out sessions, including 1-on-1 sessions, for children needing remedial instruction. Thus, under the District's method, a class of thirty-five children can be averaged with one-on-one remedial instruction, and the class goes from grossly over the limit to compliant."

Putting aside the labels, W.K.'s challenges are to the process of conducting classroom counts, which the legislature has established. For example, the legislature enacted legislation to provide for a system of classroom counts—one that presents various options, and which charges Florida's Department of Education with enforcement. The Department of Education is also charged with monitoring the classroom counts, and with instituting the legislature's chosen system to ensure each district is in compliance with the requirements. §1003.03(4), Fla. Stat. (2016). With regard to the challenge to labeling classes as "core curricula," that is also a decision made by the legislature, which enacted specific legislation to determine what could be considered "core-curricula courses," and what is to be included in the classroom counts. §§ 1003.01(14), .03(6), Fla. Stat. (2016). If the Department of Education finds a school is not in compliance, the Department is also charged with levying penalties.

Essentially, W.K. asks this court to reach inside a system established by the legislature and direct the process be conducted in a different manner. That we cannot do. As the First District recently explained, "[a] strict separation of powers supports the foundation and logic of the political-question doctrine, in that Florida's organic law does not permit a 'dispersal of decisional responsibility' which would allow the courts to dictate educational policy choices and their implementation to the other two branches of government, absent specific authorization by law. *Citizens for Strong Sch., Inc.*, 42 Fla. L. Weekly at D2643 (citation omitted).

4

It is not appropriate, nor would it be wise, for this court to order this specific school to conduct its count in a manner contrary to the system developed by the legislature. Nor is it appropriate for us to question whether the system established by the legislature is the most effective system.

Further, on a more basic level, W.K.'s argument that the classroom count of one school violates the constitution fails to appreciate our supreme court's prior holdings regarding this specific amendment. In allowing the Class-Size Amendment to be placed on the ballot, our supreme court was clear that the amendment dealt with reducing class size through legislative funding. The Class-Size Amendment was presented to the voters with a summary that our supreme court stated "makes clear that the Legislature is responsible for providing funding to reduce the number of students in public school classrooms in various grade levels." *Advisory Op. to the Att'y Gen. re Fla.'s Amend. to Reduce Class Size*, 816 So. 2d 580, 585 (Fla. 2002).

The court also noted that "the primary purpose of the amendment—the legislative funding of reduced classroom size—is adequately disclosed in the ballot title and summary." *Id.* Importantly, the court held that the fact that the amendment dictated the manner in which class sizes would be reduced, *through legislative appropriations*, did not violate the single subject requirement. *Id.* at 583.

Later, our supreme court again addressed this specific amendment and noted that the provision at issue in this appeal "requires the State to make adequate provision for reasonable class size." *Bush v. Holmes*, 919 So. 2d 392, 416 n.16 (Fla. 2006). And, in considering a subsequent proposed constitutional amendment in 2010, our supreme court held that the proposed amendment would not diminish a constitutional right because "Floridians would have the same right to have the Legislature 'make adequate provision' to ensure that there are a sufficient number of classrooms for the required class sizes." *Fla. Educ. Ass'n*, 48 So. 3d at 703.

Clearly, the constitutional provision at issue placed a burden on the legislature to sufficiently fund our schools in order to reduce class size. But, our supreme court held, it was a requirement that the legislature appropriate funds and not a directive that they accomplish the task in any specific manner. The legislature has done so through appropriations and by establishing a system that requires schools to report classroom size to the county school board, and ultimately the state, before an established

deadline.  The legislative and executive branches have also established rules the schools must follow when conducting the required counts.

It is not for the courts to question whether the manner in which the legislative or executive branch carries out these requirements is wise.  Nor could we mandate the amendment be carried out in any particular manner.  Such decisions are best left to the legislative or executive branch of our government, comprised of persons who must answer to their constituents.  There is no place for the courts in such disputes, especially on an individual classroom basis and outside the process established to handle this exact issue.

Finally, we note that the circuit court allowed W.K. the opportunity to file an amended complaint to correct the deficiencies in the original complaint.  W.K. declined to do so.  Therefore, to the extent any of the issues in the complaint could have been cured, those issues have been waived.

### *Conclusion*

W.K. sought a declaration that the Palm Beach County School District was intentionally falsifying classroom counts in violation of the Class-Size Amendment to the Florida Constitution.  However, our supreme court has decided that the amendment at issue related to appropriations by the legislature.  Further, the legislature has appropriated funds to reduce classroom size and has established a process, enforced by the Department of Education, to ensure schools comply with that process.  It is not for the courts to question the wisdom of that process, nor to intervene on a classroom by classroom basis to oversee the process.  Therefore, the court's dismissal of W.K.'s complaint is affirmed.

*Affirmed.*

WARNER and CONNER, JJ., concur.

\*　　　\*　　　\*

***Not final until disposition of timely filed motion for rehearing.***

6