# FIRST DISTRICT COURT OF APPEAL
# STATE OF FLORIDA

_____

No. 1D18-1505

_____

FLORIDA DEPARTMENT OF
HEALTH,

    Appellant,

    v.

JOSEPH REDNER, an individual,

    Appellee.

_____

On appeal from the Circuit Court for Leon County.
Karen Gievers, Judge.

April 3, 2019

PER CURIAM.

This appeal concerns whether Article X, section 29 of the Florida Constitution authorizes a qualified patient to cultivate and process marijuana for his own medical use under state law. Mr. Redner convinced the trial court that the Florida Constitution granted him this authority. We find no such authorization and reverse.

Because this Court has been asked to interpret a constitutional provision, our review is *de novo*. *Lewis v. Leon Cty.*, 73 So. 3d 151, 153 (Fla. 2011). When we interpret constitutional provisions, we generally follow the same rules that govern statutory interpretation. *Brinkmann v. Francois*, 184 So. 3d 504,

509 (Fla. 2016). We begin our interpretation by examining the language used in the constitution, and if that language is clear, unambiguous, and addresses the question at issue, we must enforce the provision as written. *Graham v. Haridopolos*, 108 So. 3d 597, 603 (Fla. 2013). When "construing multiple constitutional provisions addressing a similar subject, the provisions must be read in pari materia to ensure a consistent and logical meaning that gives effect to each provision." *Zingale v. Powell*, 885 So. 2d 277, 283 (Fla. 2004) (internal quotations omitted).

Both parties argue that the plain language of the constitution supports their position. Article X, section 29 of the Florida Constitution states in relevant part:

(a)  PUBLIC POLICY.

(1)  The medical use of marijuana by a qualifying patient or caregiver in compliance with this section is not subject to criminal or civil liability or sanctions under Florida law.

. . . .

(3) Actions and conduct by a Medical Marijuana Treatment Center registered with the Department, or its agents or employees, and in compliance with this section and Department regulations, shall not be subject to criminal or civil liability or sanctions under Florida law.

(b)  DEFINITIONS.  For purposes of this section, the following words and terms shall have the following meanings:

. . . .

(2)  "Department" means the Department of Health or its successor agency.

. . . .

(4)  "Marijuana" has the meaning given cannabis in Section 893.02(3), Florida Statutes (2014), and, in addition, "Low-THC cannabis" as defined in Section

2

381.986(1)(b), Florida Statutes (2014), shall also be included in the meaning of the term "marijuana."

(5) "Medical Marijuana Treatment Center" (MMTC) means an entity that acquires, cultivates, possesses, processes (including development of related products such as food, tinctures, aerosols, oils, or ointments), transfers, transports, sells, distributes, dispenses, or administers marijuana, products containing marijuana, related supplies, or educational materials to qualifying patients or their caregivers and is registered by the Department.

(6) "Medical use" means the acquisition, possession, use, delivery, transfer, or administration of an amount of marijuana not in conflict with Department rules, or of related supplies by a qualifying patient or caregiver for use by the caregiver's designated qualifying patient for the treatment of a debilitating medical condition.

In 2014, section 893.02(3) stated:

(3) "Cannabis" means all parts of any plant of the genus Cannabis, whether growing or not; the seeds thereof; the resin extracted from any part of the plant; and every compound, manufacture, salt, derivative, mixture, or preparation of the plant or its seeds or resin. The term does not include "low-THC cannabis," as defined in s. 381.986, if manufactured, possessed, sold, purchased, delivered, distributed, or dispensed, in conformance with s. 381.986.

Mr. Redner argues, and the trial court held, that because Mr. Redner was a qualified patient, he had the right to possess and use marijuana, which included the whole growing plant and seeds. He argues the right to possess and use the whole growing plant and seeds includes the right to cultivate and process his own marijuana. This interpretation of section 29 is not supported by the plain language of the constitution and renders portions of the constitution meaningless. In addition, this interpretation ignores the detailed framework set forth by the drafters to establish the

3

role that MMTCs play in producing and distributing medical marijuana and to provide for the regulation of those MMTCs.

Mr. Redner's argument is not supported by the plain language of section 29, which provides qualified users (like Mr. Redner) with immunity from criminal or civil liability under Florida law for the "medical use of marijuana" that is *"in compliance"* with the amendment (emphasis added). Qualified users are permitted to acquire, possess, use, deliver, transfer, and administer marijuana in amounts that do not conflict with the Department's rules. Mr. Redner argues that the term "use" contained in the medical use definition permits him to cultivate and process marijuana. The term "use" is not defined by the amendment. However, it is clear, when one examines the entire amendment, that "use" does not mean "grow" or "process," as Mr. Redner argues.

In examining section 29 as a whole, we must recognize the distinctions made by the drafters between the activities permitted to be performed by MMTCs and the activities permitted to be performed by qualified patients. We must also recognize the role the drafters gave to MMTCs to play in the production and distribution of medical marijuana. The framers explicitly authorized MMTCs to cultivate, process, and distribute medical marijuana. Art. X, § 29(b)(5), Fla. Const. Unlike the express language concerning MMTCs, there is no explicit language authorizing qualified patients to grow, cultivate, or process marijuana. Had the drafters intended for qualified patients to be able to cultivate or process medical marijuana, that language would have been included in the definition of medical use; it was not.

When we read the constitutional provisions, as a whole, we find that the language of section 29 is clear, unambiguous, and addresses the issue on appeal. A qualified patient's ability to use and possess marijuana does not include authorization to grow, cultivate, and/or process marijuana. Article X, section 29 of the Florida Constitution only authorizes MMTCs to grow, cultivate, and process marijuana for qualified patients.

We are further convinced that our interpretation is correct based upon the duties conferred upon the Department in section 29, which states:

(d) DUTIES OF THE DEPARTMENT. The Department shall issue reasonable regulations necessary for the implementation and enforcement of this section. The purpose of the regulations is to ensure the availability and safe use of medical marijuana by qualifying patients. It is the duty of the Department to promulgate regulations in a timely fashion.

(1) Implementing Regulations. In order to allow the Department sufficient time after passage of this section, the following regulations shall be promulgated no later than six (6) months after the effective date of this section:

a. Procedures for the issuance and annual renewal of qualifying patient identification cards to people with physician certifications and standards for renewal of such identification cards. Before issuing an identification card to a minor, the Department must receive written consent from the minor's parent or legal guardian, in addition to the physician certification.

b. Procedures establishing qualifications and standards for caregivers, including conducting appropriate background checks, and procedures for the issuance and annual renewal of caregiver identification cards.

c. Procedures for the registration of MMTCs that include procedures for the issuance, renewal, suspension and revocation of registration, and standards to ensure proper security, record keeping, testing, labeling, inspection, and safety.

d. A regulation that defines the amount of marijuana that could reasonably be presumed to be an adequate supply for qualifying patients' medical use, based on the best available evidence. This presumption as to quantity may be overcome with evidence of a particular qualifying patient's appropriate medical use.

. . . .

5

(e) LEGISLATION. Nothing in this section shall limit the legislature from enacting laws consistent with this section.

Subsection (d)(1)c. states that the Department shall set standards to ensure that MMTCs are providing safe marijuana, securing their marijuana, testing and inspecting their marijuana, and accounting for their marijuana. Subsection (d) does not confer this type of authority to the Department over qualified patients. At oral argument, Mr. Redner argued that the broad statement contained in subsection (d) about the purpose of the regulation conferred authority on the Department to ensure that qualified patients secured and accounted for their marijuana. Mr. Redner's interpretation would render the enumerated subparagraphs contained in subsection (d)(1)d. containing the regulations the Department was tasked with developing superfluous. Because we are forbidden from interpreting constitutional provisions in such a manner, we find Mr. Redner's argument unpersuasive.

Even if we found the language contained in section 29 unclear and/or ambiguous, we would still hold that the constitution does not allow a qualified patient to grow, cultivate, and process marijuana. If a constitutional provision is ambiguous or does not address the issue raised, a court must construe the constitutional provision in a manner that is consistent with the intent of the framers and voters. *W. Fla. Reg'l Med. Ctr., Inc. v. See*, 79 So. 3d 1, 9 (Fla. 2012). If an ambiguity exists, courts should look to the rules of statutory construction, which may include the purpose and legislative history in order to construe the provision in a manner consistent with the intent of the framers and voters. *Id.*

With this framework in mind, we first look at the purpose of section 29. The only purpose stated in section 29 is the implementation of regulations that ensure the availability and safe use of medical marijuana. The amendment provides the Department with the duty (and ability) to regulate the cultivation practices of MMTCs. The amendment does not provide the same authority to the Department concerning qualified patients. Without the ability to regulate the cultivation practices of qualified patients, the Department would not be able to ensure that qualified patients are safely using marijuana.

6

We also look to the ballot summary to determine the purpose of the amendment and the will of the voters because a ballot summary provides the purpose of the amendment and has to present the scope of an amendment in order to be valid. *See Advisory Op. to Att'y Gen. re Term Limits Pledge*, 718 So. 2d 798, 804 (Fla. 1998) (if a ballot summary does not accurately describe the scope of the amendment, then it fails to accurately describe the purpose of the amendment). The Florida Supreme Court found the ballot summary for Article X, section 29 of the Florida Constitution fairly informed the voters of the purpose of the proposed amendment. *In re Advisory Op. to Att'y Gen. re Use of Marijuana for Debilitating Med. Conditions*, 181 So. 3d 471, 478-79 (Fla. 2015). The ballot summary read as follows:

> Allows medical use of marijuana for individuals with debilitating medical conditions as determined by a licensed Florida physician. Allows caregivers to assist patients' medical use of marijuana. The Department of Health shall register and regulate centers that produce and distribute marijuana for medical purposes and shall issue identification cards to patients and caregivers. Applies only to Florida law. Does not immunize violations of federal law or any non-medical use, possession or production of marijuana.

*Id.* at 476. There is no language contained in the ballot summary that would have allowed the voters to surmise that the passing of this amendment would permit qualified patients to cultivate and process their own medical marijuana. Therefore, Mr. Redner's position is not consistent with the purpose of the amendment or the will of the voters.

Based on the foregoing, we find that the Florida Constitution does not allow qualified patients and caregivers to grow, cultivate, and/or process their own marijuana. Accordingly, we REVERSE and REMAND this cause to the trial court to enter judgment for the Department.

WETHERELL and MAKAR, JJ., and BRASINGTON, MONICA J., ASSOCIATE JUDGE, concur.

7

_____

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

_____

Jason B. Gonzalez, Rachel E. Nordby, and Amber Stoner Nunnally of Shutts & Bowen, LLP, Tallahassee, for Appellant.

Luke Lirot of Luke Charles Lirot, P.A., Clearwater, and Amanda L. Derby-Carter of Werksman Jackson Hathaway & Quinn LLP, Los Angeles, CA, for Appellee.